IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHARINE L. M., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 20-cv-00664-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Katharine L. M. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff protectively applied for Title II and Title XVI disability benefits on January 30, 2019. (R. 10, 221-33.) Plaintiff alleged she has been unable to work since July 1, 2016, due to back issues, depression, anxiety, and nerve damage. (R. 232, 271.) Plaintiff was 32 years old at the time of the ALJ's decision. (R. 29, 221.) Plaintiff has a high school education and past relevant work as a physical therapist assistant. (R. 48-50, 57-58, 272.)

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 139-46, 148-58.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on June 12, 2020. (R. 41-62, 159-61.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 10-29.) The Appeals Council denied review on October 27, 2020 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed this appeal on December 16, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through June 30, 2022. (R. 12.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the onset date of July 1, 2016. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease, status post-surgery; (2) obesity; (3) depression; and (4) anxiety. (R. 13.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 13-16.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)" with certain mental limitations[2] and the following physical limitations:

> [C]laimant is able to occasionally lift and/or carry ten pounds, frequently lift and/or carry up to ten pounds, stand and/or walk at least two hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. The claimant is never able to climb such things as ladders or scaffolds. She is only occasionally able to climb such things as stairs or ramps, or stoop.

(R. 17.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 17-27.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a physical therapist assistant. (R. 27.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as document preparer, clerical mailer, and touch-up screener. (R. 28.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 29.)

---

[2] Plaintiff's mental limitations are not at issue in this appeal.

**IV.   Issues**

Plaintiff raises a single allegation of error in her challenge to the denial of benefits: the ALJ failed to properly evaluate Plaintiff's symptoms[3] relating to her lumbar spine impairments.  (ECF No. 19 at 7-14 (citing Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (Oct. 25, 2017)).)  While Plaintiff acknowledges the ALJ discounted her claimed symptoms "because her treatment history and physical examinations did not support disabling limitations" (*id*. at 8), she asserts the ALJ "misstated the evidence, relied on his own inferences . . . [and] did not provide support for his decision to discount [Plaintiff's] allegations of pain" (*id*. at 10).

This Court disagrees and finds the ALJ's opinion was adequately supported by substantial evidence and was in step with applicable legal standards.  The ALJ's decision is affirmed.

**V.   Analysis**

   **A.   Requirements for Symptom Analysis**

Generally, when evaluating a claimant's symptoms, the ALJ uses a two-step process.[4]  *See* SSR 16-3p, at *2; *see also* 20 C.F.R. §§ 404.1529, 416.929 (regulations governing the evaluation of symptoms).  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged.  SSR 16-3p, at *3.  Second, once such impairments are

---

[3] "Symptoms" refer to a claimant's "own description of [her] physical or mental impairment."  20 C.F.R. §§ 404.1502(i); 416.902(n).

[4] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012).  The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*.  *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished).  But, the term "credibility" is no longer used.  SSR 16-3p, at *2.

5

established, the ALJ must evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's capacity to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medications; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8. The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391). This is particularly true given that courts are prohibited from reweighing evidence or substituting their judgment for that of the Commissioner, *Bowman*, 511 F.3d at 1272, even if they would have reached a different conclusion, *White*, 287 F.3d at 908.

That is not to say, however, that the ALJ may simply make "a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, at *10. Rather, the ALJ's decision "must contain

6

specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

### B. The ALJ's Symptom Analysis

Here, the ALJ followed the steps outlined in the regulations and Ruling in accounting for Plaintiff's lumbar-related symptoms. After finding Plaintiff's degenerative disc disease severe (R. 13), the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (R. 17-18). *See, e.g.*, SSR 16-3p, at *2. The ALJ then turned to the second step—the evaluation of the intensity and persistence of symptoms to determine how the symptoms limit the claimant's capacity to work. *See, e.g.*, *id.* at *4. It is at this second step that Plaintiff argues the ALJ's analysis failed.

However, the ALJ looked at Plaintiff's statements, the objective medical evidence, and other evidence on the relevant factors in coming to his conclusions. The ALJ noted Plaintiff's daily activities (R. 17-18, 23);[5] the location, duration, frequency, and intensity

---

[5] This included Plaintiff's testimony that, on "bad days," she needs to lie down for 30 minutes after standing for 15 minutes; she occasionally uses a cane but can walk without a cane most of the time; she spends at least a couple of hours a day lying down; she is able to do personal care tasks but may need some assistance putting on pants, socks, and shoes due to her drop foot; and she may be physically unable to shower one day a week. (R. 17-18.) The ALJ also noted that Plaintiff traveled, spent time with her son, and worked occasionally (R. 23); and stated that her pain interfered with her daily life, sleep, work, and ability to ambulate (*id.*).

7

of Plaintiff's symptoms (R. 18-27);[6] precipitating and aggravating factors (R. 18-21);[7] the type, dosage, and effectiveness of the medication Plaintiff took to alleviate her back pain (R. 18-26);[8] the other treatment she received for symptom relief (R. 17-23, 26);[9] and other

---

[6] This included Plaintiff's reports of constant low back pain that radiates into both legs; that she can stand only 15 minutes even after a revision of her spinal cord stimulator in July 2019; that she could walk 75 to 100 yards without needing to stop and rest (R. 17); that she cannot lift a gallon of milk or more than 6 pounds; and that she has foot drop (R. 18).

The ALJ also noted that objective medical exams revealed Plaintiff had gradually progressive back pain since an accident in 2011 (R. 18), but physical exams often fluctuated from findings of abnormal gait, decreased lumbar range of motion, tenderness to palpation, and pain with flexion and extension, to finding of normal gait, normal musculoskeletal range of motion, no tenderness, normal gross motor function, and normal strength in her lower extremities (R. 18-26).

The ALJ's notes also included Dr. Brian Ipsen's post-surgery lifting, bending, and twisting restrictions (R. 21); Mr. John Bell's opinion that Plaintiff could lift/carry 10 pounds occasionally and 20 pounds rarely, that she could occasionally twist and balance, rarely stoop, crouch, and crawl, but never climb (R. 24); Mr. Bell's finding that Plaintiff could frequently reach, occasionally handle, rarely finger, never feel, sit for 10 minutes at one time and less than 2 hours in an 8-hour workday, and stand for 10 minutes at a time and less than 2 hours in an 8-hour workday (*id*); the initial administrative medical finding that Plaintiff could perform a reduced range of light work—standing and walking only 2 hours in an 8-hour workday, never climbing ladders, ropes, or scaffolds, and occasionally climbing ramps, stairs, and occasionally stooping (R. 25-27); and the reconsideration administrative medical finding that Plaintiff could perform the physical requirements of light work. (*Id.*)

[7] *See supra* nn. 5 & 6. This also included that Plaintiff had pain from hardware implanted in her back until it was removed (R. 18-19, 21) and experienced foot drop after working an 11-hour day (R. 20).

[8] This included that Plaintiff, at various times, was on Gabapentin, Percocet, Flexeril, Cyclobenzaprine, Amitriptyline, and Abilify (R. 19-25); that there were certain periods in the record where Plaintiff appeared to be temporarily medication non-compliant (R. 20); that, at times, the combination of Plaintiff's medication and other treatment worked well to alleviate most of her pain and allow her to stay active (*id*); but acknowledging that, despite consistent medication treatment, Plaintiff continued to experience lumbar pain that radiated into her legs bilaterally. (R. 18-26.)

[9] This included Plaintiff's spinal cord fusion; multiple surgeries for implantation, removal, and revision of both a hardware block and a spinal cord stimulator; and numerous epidural steroid injections. (R. 17-23, 26.) The ALJ also noted that, while these procedures have given her a varying degree of pain relief, they did not render her pain-free. (*Id.*)

factors concerning Plaintiff's functional limitations and restrictions due to pain (R. 18, 20-22).[10] *See, e.g.*, SSR 16-3p at *7-8. Only in light of this analysis did the ALJ hold that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her low back symptoms were not wholly consistent with the medical and other evidence in the record. (R. 18.) The ALJ went on to find,

> The claimant has described disabling pain. She has a history of injury and surgery. She has undergone injections and she has a spinal cord stimulator. The claimant has received pain management, and the nature of the claimant's history of treatment is consistent with the presence of pain. However, the claimant's allegations regarding the effects of pain on functioning are not fully consistent with the treatment findings.

(R. 22; *see also* R. 23 (noting Plaintiff's activities of daily living are not fully consistent with disabling pain and other symptoms).)

### C. Plaintiff's Arguments

In faulting the ALJ's symptom analysis, Plaintiff focuses on whether there is substantial evidence supporting the ALJ's findings. Plaintiff first argues that the ALJ misstated or misconstrued the effect of Plaintiff's treatment notes. (ECF No. 19 at 10.) Plaintiff then argues the ALJ improperly relied on a January 2020 physical examination which, she argues, he incorrectly believed was the last one in the record. (*Id.* at 12.) Both arguments fail.

---

[10] This included the ALJ's finding that, despite reportedly debilitating symptoms, Plaintiff had worked off-and-on since her alleged disability onset date. (R. 18, 20-22.) The ALJ noted that Plaintiff had worked as an activities assistant for elderly residents full-time for a brief period—a job she had to leave due to missing too much work as a result of her back pain and muscle spasms (R. 18); that in January 2019, she worked an 11-hour day, which caused her to have foot drop (R. 20); that she worked at a liquor store in February 2018; that she worked occasionally in June and July 2019 (R. 22); and that she worked as a substitute teacher up until December 2019. (R. 21, 23.)

### 1. Substantial evidence supports the ALJ's consistency finding.

In her brief, Plaintiff focuses on SSR 16-3p's instruction that the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so . . . any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *10. (*See also* ECF No. 19 at 9.) Plaintiff maintains the ALJ erred in this regard by failing to properly assess her allegations, which "rendered the RFC unsupported by substantial evidence" and requires remand. (*Id.* at 8.) She specifically takes issue with the ALJ's notation that Plaintiff's treatment allowed her to stay active and do some work. (*Id.* at 9-10.) She claims these statements were at odds with the evidence of record and merely relied on the ALJ's own conclusions. (*Id.*) To support her argument, Plaintiff gives a detailed recounting of her treatment history. (*Id.* at 10-13.) She outlines her subjective reports of pain, objective examinations, and the medical treatment she underwent for pain relief. (*Id.*) But the ALJ considered this evidence. The exhibits from which Plaintiff draws her recounting—Exhibits 3F, 5F, 7F, 8F, 9F, 11F, 14F, 18F—were all considered and discussed by the ALJ in his decision. (R. 14-26.) *See also supra* nn. 5-10.

Ultimately, Plaintiff simply argues that her consistent reports, physical examinations, and extensive treatment "supported her allegations" regarding her limitations. (ECF No. 19 at 13-14.) This may well be true, but it is not part of this Court's determination—which is whether there was substantial evidence to support <u>the ALJ's</u> decision. Under the substantial evidence standard, the ALJ is obligated to consider all the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Having done that, as long as the decision contains the reasons for the weight given Plaintiff's symptoms, is consistent with and supported by the evidence, and is clearly articulated

such that this Court can assess how the ALJ evaluated her symptoms, the ALJ has met his duty. *See* SSR 16-3p, at *10. This Court will not reweigh the evidence or substitute its judgment for that of the ALJ. *Bowman*, 511 F.3d at 1272. Here, the ALJ adequately considered Plaintiff subjective reports and treatment history. His determination that she was limited to a reduced range of sedentary work was consistent with a reasonable reading of the record and was upheld by more than the scintilla of evidence necessary for the Court to accept the ALJ's conclusions.[11]

### 2. The ALJ did not misconstrue Plaintiff's physical examinations.

Plaintiff next complains that "the ALJ also erred in his reliance on [her] physical examination findings to discredit her reports of significant pain," appearing to cite a portion of the decision where the ALJ noted Plaintiff's "last physical examination was 'essentially normal.'" (ECF No. 19 at 12 (citing R. 25).) Plaintiff argues this was "not [her] last physical examination" and that later records showed she had pain with flexion and extension, an antalgic gait, reduced range of motion, and pain on palpation. (*Id.* at 12-13.) Plaintiff asserts the ALJ mischaracterized evidence "by relying on one normal

---

[11] Plaintiff also takes issue with the ALJ's characterization of Plaintiff's February 2019 treatment as "conservative." (R. 21; *see* ECF No. 19 at 12.) Plaintiff asserts the ALJ "failed to explain" how her medical treatments were "conservative care" and argues this treatment was, instead, "consistent with her allegations of pain and the associated limitations from her lumbar impairments." (ECF No. 19 at 12.) Plaintiff then cites a case where an ALJ "mischaracterized or downplayed the severity of some evidence to support his adverse credibility finding, without considering other probative evidence that tend[ed] to support [the plaintiff's] allegations of pain and limited functioning." *Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017) (unpublished). Unlike *Kellams*, the evidence on which the ALJ relied to discount symptoms was supported by the record and consistent with his findings, and the ALJ <u>did</u> discuss, rather than "completely overlook[]," all relevant findings and records. *Id.* at 914-15. The ALJ sufficiently discussed evidence both supportive of Plaintiff's limitations and detracting from her more extreme subjective reports. *See supra* nn. 5-10. The Court does not find that the use of the word "conservative" overwhelms the ALJ's consideration of the evidence as a whole or his weighing of such evidence.

examination while downplaying the numerous abnormalities noted by her back specialist . . . ." (*Id.* at 13.)

Plaintiff's characterization of the ALJ's characterization is, itself, incorrect. The ALJ did not declare the January 2020 examination to be the last physical exam on record. Rather, he stated that "the last physical examination <u>at the Health Center</u> was on January 24, 2020 and was essentially normal," as Plaintiff denied weakness and swelling, and the examination showed normal gait, normal range of motion, no tenderness, and normal gross motor function. (R. 25 (emphasis added).) And, the ALJ did not ignore the later treatment records—he considered them. (R. 25-26.) The ALJ merely cited the January 2020 notation as an example of a "concurrent" record where Plaintiff exhibited milder physical symptoms than on other exams.[12] (R. 26.)

This is not a case where the January 2020 notation was the only record on which the ALJ relied in his symptom evaluation. Nor is it the case where, after eliminating the "mischaracterized" evidence, there is nothing left in the ALJ's decision to support his symptom findings. *Cf. Hubert A. M. v. Saul*, No. 20-CV-00297-SH, 2021 WL 2568044, at *6 (N.D. Okla. June 23, 2021). As noted above, the ALJ sufficiently reviewed all of Plaintiff's medical and non-medical evidence in making his determination. These records included numerous notations wherein Plaintiff presented abnormally upon examination, and, conversely, where she presented without debilitating pain symptoms. (R. 13-26.) *See also supra* n. 6. After reviewing these records—even the ones noting mostly "normal" findings—the ALJ did not find Plaintiff to be without limitations. Quite the opposite. The

---

[12] The ALJ also found a variation in the concurrent record reports elsewhere in his review. For example, he noted records showing Plaintiff with abnormal gait from July 2019 to May 2020, while other records showed a normal gait during the September 2019 to January 2020 timeframe. (R. 15; *see also* R. 19-21 (noting various normal findings).)

12

ALJ found that Plaintiff could only perform sedentary work and, even then, with additional physical limitations. This finding was supported by substantial evidence.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

SO ORDERED this 11th day of August, 2022.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT